**AFFIRMED and Opinion Filed April 4, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00622-CV

### ALLIANCE FAMILY OF COMPANIES AND JUSTIN MAGNUSON, Appellant
### V.
### JAMISHA NEVAREZ, Appellee

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-01162**

## MEMORANDUM OPINION

Before Justices Whitehill, Molberg, and Reichek
Opinion by Justice Reichek

In this interlocutory appeal, Alliance Family of Companies and Justin Magnuson appeal the trial court's order denying their motion to compel arbitration of a suit brought against them by Jamisha Nevarez. In a single issue, appellants generally contend the ruling was error because (1) there is a valid arbitration agreement, (2) appellee's claims fall within the scope of the agreement, and (3) appellee failed to raise an effective affirmative defense to application of the agreement. We conclude appellee's claims fall outside the scope of the arbitration agreement; accordingly, we affirm the trial court's order.

FACTUAL BACKGROUND

Alliance Family of Companies is a diagnostic testing facility that provides neurodiagnostic, cardiac, and sleep testing. Magnusson is its chief executive officer. In November 2016, appellants

hired appellee as Magnusson's personal assistant. Six months later, she signed two nondisclosure agreements, one with AFC and the other with Magnusson. In each of the NDAs, appellee agreed she would not "directly, indirectly or in any manner whatsoever, use, disseminate, disclose or publish" AFC's or Magnusson's confidential information. Confidential information was defined differently in each agreement.

With respect to AFC, confidential information was defined as "any and all technical and non-technical information provided to [appellee] by AFC," and included, among other things, "personal and/or business entity contacts of any type whatsoever relating in any manner whatsoever to AFC and/or to Justin Magnuson . . .." As to Magnusson, confidential information was defined as "any and all information provided to or discovered by [appellee] regarding [Magnusson], and included, among other things, "personal and/or business contacts; personal and/or business activities; . . . business and/or personal contacts and/or activities of any type whatsoever relating in any manner whatsoever to [Magnusson]." Both NDAs also contained identical alternative dispute resolution clauses that called for "[a]ny dispute under this Agreement" to be subject to arbitration in the event mediation was unsuccessful.

In January 2018, appellee sued appellants alleging causes of action for assault, sexual assault, and battery. She alleged the events giving rise to her causes of action occurred after Magnusson called her to his home. She alleged AFC was directly liable because Magnusson was acting at such time as a principal or vice principal of AFC and because AFC failed to provide a safe workplace. She also alleged AFC was vicariously liable for Magnusson's conduct.

Appellants filed a joint motion to compel arbitration, asserting appellee's claims were "squarely covered" by the arbitration clauses of the NDAs because appellee alleged the assault, sexual assault, and battery occurred in the course and scope of both Magnusson's and her employment. Attached to the motion were copies of the NDAs, Magnusson's declaration stating

that he witnessed appellee sign the agreements, and heavily redacted emails between the parties regarding settlement and mediation.

In response to the motion, appellee argued there was not a valid arbitration agreement because there was no consideration to support the NDAs, no meeting of the minds that sexual assault could not be disclosed, and the arbitration clauses were unconscionable. Additionally, she asserted that even if the agreements are valid, the claims raised in her petition are not covered by them.

The trial court conducted a hearing and subsequently denied appellants' motion to compel without stating a basis.[1] This appeal followed.

APPLICABLE LAW

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Henry v. Cash Biz, LP,* 551 S.W.3d 111, 115 (Tex. 2018).[2] We defer to the trial court's determinations if they are supported by evidence but review its legal determinations de novo. *Id.* Whether the claims in dispute fall within the scope of a valid arbitration agreement is a question of law. *Id.*

Courts may require a party to submit a dispute to arbitration only if the party has agreed to do so. *See Seven Hills Commercial, LLC v. Mirabel Custom Homes, Inc.*, 442 S.W.3d 706, 714 (Tex. App.—Dallas 2014, pet. denied). A party seeking to compel arbitration must establish a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement. *Id.* at 715. To determine whether a party's claims are within the scope of an arbitration agreement, we focus on the factual allegations and not on the legal causes of action asserted. *In*

---

[1] The trial judge granted appellants' motion to permanently seal the original and first amended petition. He also ordered that the amended petition "shall only be published in redacted format as set forth in Exhibit A." No exhibit is attached to the order, and a redacted petition was not filed in this Court. Moreover, we note that this Court granted requests to file under seal both appellee's brief and appellants' reply brief.

[2] We note that the record does not reflect whether the trial court applied state law or federal law when it denied appellants' motion. Appellants' motion did not specify either the Federal Arbitration Act or the Texas General Arbitration Act, and the briefing likewise is nonspecific. Regardless, our decision would be the same under either Act.

*re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001). We resolve any doubts about the factual scope in favor of arbitration. *Id.* Although both Texas and federal policy strongly favor arbitration, that policy "cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and ambiguous provisions of an agreement." *IKON Office Sol., Inc. v. Eifert*, 2 S.W.3d 688, 697 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

DISCUSSION

We need not address appellants' arguments regarding consideration, meeting of the minds, and unconscionability because, even if we assume there is a valid arbitration agreement, we conclude the claims here do not fall within its scope.

Appellants argue the arbitration clause is broad and so long as the factual allegations "'touch matters,' are 'factually intertwined,' have a 'significant relationship' to or are 'inextricably enmeshed,' with the contract containing the arbitration provision, the claim is arbitrable.'" But the arbitration clause at issue here does not contain broad language.

Language in an arbitration clause providing for arbitration of "any dispute arising between the parties," or "any controversy or claim arising out of or relating to the contract thereof," or "any controversy concerning the interpretation, performance or application of the contract" is considered broadly worded. *Cotton Commercial USA, Inc. v. Clear Creek Indep. Sch. Dist.*, 387 S.W.3d 99, 107–08 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see In Re Signor*, No. 05-16-00703-CV, 2017 WL 1046770, at *6 (Tex. App.—Dallas Mar. 20, 2017, orig. proceeding) (mem. op.) ("Both federal and Texas courts—including this Court—have concluded that similar arbitration provisions that employ terms like "any dispute" and "relating to" are broad arbitration clauses capable of expansive reach and create a presumption of arbitrability."); *Cash Biz,* 551 S.W.3d at 116 (agreement that applies to "all disputes" and specifies that "'dispute' and 'disputes' are given the broadest possible meaning and include, without limitation . . . all claims, disputes or

–4–

controversies arising from or relating directly or indirectly to the signing of this Arbitration Provision" was broad clause); *Saxa Inc. v. DFD Architecture Inc.*, 312 S.W.3d 224, 229 (Tex. App.—Dallas 2010, pet. denied) ("'[a]ny claim, dispute or other matter in question arising out of or related to' the contract" was subject to arbitration was broad clause); *AdvoCare GP, LLC v. Heath*, No. 05–16–00409–CV, 2017 WL 56402, at *2 (Tex. App.–Dallas Jan. 5, 2017, no pet.) (mem. op.) (concluding clause requiring arbitration of "any controversy, dispute or claim arising out of or in any way related to or involving the interpretation, performance or breach of" a nondisclosure agreement is broad arbitration clause requiring arbitration of all asserted claims and defenses, including tort claims).

The clause in this case does not employ terms like "arising out of" or "relating to;" rather, it narrowly calls for arbitration of "[a]ny dispute under this Agreement." *See RSR Corp. v. Siegmund*, 309 S.W.3d 686, 701 (Tex. App.—Dallas 2010, no pet.) (explaining that phrase "under the agreement," in context of forum selection clause, suggests direct relationship between agreement and dispute and limits application to actions that arose as result of agreement). Thus, the question before us is whether appellee's claims are disputes under the NDAs. We have reviewed the factual allegations contained in appellee's amended petition[3] and conclude appellees' claims for assault, sexual assault, and battery do not fall within the scope of the arbitration agreement. The NDAs address the nondisclosure of confidential information and provide an alternative dispute resolution procedure in the event of a dispute. The NDAs do not address in any way the intentional torts alleged by appellee.

In reaching this conclusion, we reject any notion that our sister court's opinion in *IFMG Securities, Inc. v. Sewell*, suggests a different result. In *Sewell*, the court of appeals concluded an arbitration clause covered an employee's claims for sexual harassment, assault, and battery.

---

[3] Because the pleading is under seal, we do not detail the particular allegations.

No.13-10-00235-CV, 2011 WL 5515528, at *3 (Tex. App.—Corpus Christi Nov. 10, 2011, no pet.) (mem. op.). But the clause in that case, unlike here, "contained broad provisions, including a mutual promise between the parties to take all disputes related to their employment relationship to binding arbitration." 2011 WL 5515528, at *1. The agreement covered a non-exclusive list of claims, including breach of contract, torts, harassment, and violations of state law and applied to actions taken by [her employer], all of its affiliated entities, and its employees/agents. *Id.* Thus, the result in *Sewell* can be explained by reference to the much broader language in the arbitration provision.

Moreover, we reject any suggestion that recitals, or "whereas clauses," in the agreements transformed them from NDAs as part of her employment into full employment contracts that required arbitration of any disputes arising out of that employment relationship. A contract recital is a preliminary statement explaining the background of the transaction or the reason for entering the contract. *Fulmanite Worldwide, Inc. v. NextCorp, Ltd.*, 339 S.W.3d 326, 336 (Tex. App.—Dallas 2011, no pet.). Recitals in a contract are not strictly part of a contract and will not control a contract's operative clauses unless those clauses are ambiguous. *Id.*; *Fleming v. Kirklin Law Firm, P.C.*, No. 14-14-00202-CV, 2015 WL 7258700, at *5 (Tex. App.—Houston [14th Dist.] Nov. 17, 2015 (mem. op.) (no pet.). Where the recitals are broader than the contract stipulations, the former will not extend the latter. *Fulmanite Worldwide*, 339 S.W.3d at 336.

The Magnusson NDA contains a recital that Magnusson requested appellee to provide services as an assistant "with the understanding that all work done by appellee shall be in the course and scope of this Agreement[.]" The AFC NDA contains a similar provision that adds the clause "and paid for by AFC" after "all work done." These recitals do nothing more than explain the reason for the NDA; they do not transform the agreement into an employment contract or otherwise expand the terms of the agreement.

–6–

We conclude the scope of the arbitration clause in the NDAs does not include the claims brought by appellee. Accordingly, we conclude the trial court did not abuse its discretion in denying the motion to compel. We overrule the sole issue.

We affirm the trial court's order.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

180622F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALLIANCE FAMILY OF COMPANIES
AND JUSTIN MAGNUSON, Appellants

No. 05-18-00622-CV        V.

JAMISHA NEVAREZ, Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-18-01162.
Opinion delivered by Justice Reichek;
Justices Whitehill and Molberg
participating.

In accordance with this Court's opinion of this date, the order denying appellants' motion to compel arbitration of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee JAMISHA NEVAREZ recover her costs of this appeal from appellants ALLIANCE FAMILY OF COMPANIES AND JUSTIN MAGNUSON.

Judgment entered April 4, 2019.